# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Gaetane Cadet,

        Plaintiff,

v.                           Case No. 1:20-cv-3159-MLB

The First Liberty Insurance
Corporation,

        Defendant.

_____/

## **OPINION & ORDER**

In July 2019, a bathroom at Plaintiff Gaetane Cadet's house leaked, flooding and damaging her home. Defendant The First Liberty Insurance Company adjusted the claim and paid Plaintiff. Plaintiff sued, asserting claims for: (1) bad faith, (2) attorneys' fees and costs, (3) punitive damages, (4) Georgia RICO, and (5) diminution of value. Defendant moves for summary judgment and to strike three affidavits Plaintiff filed in opposing summary judgement. (Dkts. 33; 38; 39; 45.) The Court grants all Defendant's motions.

# I.   Background

## A.   The Court's Use of Proposed Facts and Responses

The Court draws the facts largely from the parties' submissions.  In support of its motion for summary judgment, Defendant filed a statement of undisputed material facts (Dkt. 33-1).  *See* LR 56.1(B)(1), NDGa. Plaintiff responded to Defendant's statement of material facts (Dkt. 42-2).[1]  *See* LR 56.1(B)(2)(a).  Plaintiff also filed an additional statement of undisputed material facts (Dkt. 42-2 at 6–14.).  *See* LR 56.1(B)(2)(b).[2]

The Court uses the parties' proposed facts and responses as follows. When a party does not dispute the other's fact, the Court accepts it for purposes of summary judgment and cites the proposed fact and

---

[1] The Standing Order provides: "[A] party responding to a statement of material facts shall copy into its response document the numbered statement to which it is responding and provide its response to that statement immediately following." (Dkt. 40 at 9.)  Plaintiff did not copy into its response document the numbered statement to which it was responding. (*See* Dkt. 42-2.)  The Court admonishes Plaintiff for violating the Standing Order.  The rule is clear and should be followed.

[2] For support, Plaintiff cites nothing or her complaint, thereby violating the local rules.  Under Local Rule 56.1(B)(1), each material fact must be supported by a citation to *evidence* proving such fact.  LR 56.1(B)(1). While Plaintiff titles her statement of additional facts, "Plaintiff's Additional Statements of Undisputed Material Facts from her Verified Complaint," there is no indication her complaint is verified.  The Court admonishes Plaintiff for violating the Local Rules.

corresponding response.  When one side admits a proposed fact in part, the Court includes the undisputed part.  When one side denies the other's proposed fact in whole or in part, the Court reviews the record and determines whether a fact dispute exists.  If the denial lacks merit, the Court deems the fact admitted so long as the record citation supports it.  If a fact is immaterial, it is excluded.[3]  If a fact is stated as an issue or legal conclusion, it is excluded.  *See* LR 56.1(B)(1)(c).  Where appropriate, the Court modifies one party's fact per the other's response when the latter better reflects the record.  Finally, as needed, the Court draws some facts directly from the record.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

---

[3] Some proposed facts the Court declines to exclude on materiality grounds are not "material" as that term is generally employed in the summary judgment context.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (identifying material facts as those that "might affect the outcome of the suit under the governing law").  Some are included for background purposes or to generate context for the Court's analysis.  Which facts ultimately prove material should be apparent from the analysis.

**B.    Facts**

Plaintiff owns a home in Sugar Hill, Georgia.  (Dkts. 33-1 ¶ 1; 42-2 ¶ 1.)  Defendant issued Plaintiff an insurance policy on the home.  (Dkts. 33-1 ¶¶ 6–7; 42-2 ¶¶ 6–7.)  The policy was in effect from October 2018 through October 2019.[4]  (*Id.*)  It stated Defendant would pay the actual cash value of the damages until the cost to replace the damage is incurred, at which point Defendant would pay more funds up to the replacement cost.  (Dkts. 33-1 ¶ 9; 42-2 ¶ 9.)  It further stated that "Loss Settlement does not include payment for any actual or perceived decrease in market or resale value resulting from loss to or repair of your covered property."  (Dkts. 33-1 ¶ 8; 42-2 ¶ 8.)

On July 14, 2019, Plaintiff notified Defendant that a bathroom on the second floor of her home had flooded.  (Dkts. 33-1 ¶ 10; 42-2 ¶ 10, 44; 44 ¶ 44.)  The water damaged walls, ceiling, and floors.  (Dkts. 33-1 ¶ 12; 42-2 ¶ 12.)  Plaintiff had made at least four prior claims with Defendant

---

[4] Plaintiff denies this fact contending the alleged copy of the policy was not the same policy in effect at the time of the incident.  (Dkt. 42-2 ¶ 6.)  But Plaintiff cites no supporting evidence, so the Court deems the fact admitted.

for damages to her house, specifically claims in 2009, 2011, 2015, and 2018. (Dkts. 33-1 ¶¶ 2–3; 42-2 ¶¶ 2–3.)

On July 14, Defendant sent a remediation company, Rainbow International Restoration to the property. (Dkts. 33-1 ¶¶ 11, 13; 42-2 ¶¶ 11, 13, 44; 44 ¶ 44.)   Rainbow found that the upstairs toilet had overflowed, resulting in damages to the first-floor ceiling. (Dkts. 33-1 ¶ 13; 42-2 ¶ 13.)   Within three days, Defendant sent an adjuster to the property to inspect and estimate the damage. (Dkts. 33-1 ¶ 14; 42-2 ¶ 14, 45; 44 ¶ 45.)   The adjuster found damage to the property totaling $8,202.48 and damage to personal items totaling $5,554.37. (Dkts. 33-1 ¶ 16; 42-2 ¶ 16.)   Defendant determined the value of the loss was $13,979.36. (Dkts. 33-1 ¶ 17; 42-2 ¶ 17.)   Defendant explained this to Plaintiff and sent a check for $5,740.51 on July 18, 2019. (Dkts. 33-1 ¶¶ 18–20; 42-2 ¶¶ 18–20.) Defendant advised Plaintiff she would receive the balance of the loss, measured by the replacement cost, once she incurred costs to repair and replace the damage. (Dkts. 33-1 ¶ 21; 42-2 ¶ 21.)

Plaintiff testified she understood but had made no repairs to her dwelling.  (Dkts. 33-1 ¶ 36; 42-2 ¶ 36.)

Plaintiff sent Defendant a letter on February 7, 2020 demanding $110,878.59.  (Dkts. 33-1 ¶ 22; 42-2 ¶ 22.)  This included damages to the dwelling in the amount of $87,760.02, damages to personal property in the amount of $3,116.57, and $20,000 for diminution of value.  (Dkts. 33-1 ¶ 23; 42-2 ¶ 23.)  On June 25, 2020, Plaintiff sued Defendant, bringing claims for bad faith failure to pay pursuant to O.C.G.A. § 33-4-6 (Count I); attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11 (Count II); punitive damages pursuant to O.C.G.A. § 51-12-5.1 (Count III), Georgia RICO pursuant to O.C.G.A. § 16-14-1, *et seq.* (Count IV), and diminution of value (Count V).  (Dkt. 1-1.)

During discovery, Defendant took Plaintiff's deposition.  Plaintiff testified she hired Mr. Bruce Fredrics to provide her an estimate to repair certain items in her house and that his work became the basis for her demand against Defendant.  (Dkt. 33-4 at 28:16-24.)  She also admitted that portions of her February 2020 demand were not, in fact, related to the July 14, 2019 water loss, and instead, represented unrelated, prior

6

damages to her home.  (Dkts. 33-1 ¶ 24; 42-2 ¶ 24.)[5]  Plaintiff admitted her February 2020 demand included unrelated prior damage to the laundry room, lower hall, lower, bath, dining room, and master bath. (Dkts. 33-1 ¶ 25; 42-2 ¶ 25.)  Indeed, Plaintiff knew much of the damage claimed was unrelated to the 2019 claim.  (Dkts. 33-1 ¶ 26; 42-2 ¶ 26.) Plaintiff also testified that while her contents claim was for $3,116.57, Defendant paid her $5,554.47 for damages to contents of her house. (Dkts. 33-1 ¶ 27; 42-2 ¶ 27.)

Defendant move for summary judgment on Plaintiff's bad faith claim, arguing Plaintiff's admission that her February 7, 2020 demand included costs unrelated to the July 14, 2019 water leak precluded such a claim.  (Dkt. 33-2 at 6-11.)  Plaintiff then filed an affidavit retracting her deposition testimony and saying her demand against Defendant did

---

[5] Plaintiff denies this fact, as well as the next two, citing to her deposition. (Dkt. 42-2 ¶¶ 24–26.)  First, it appears Plaintiff's citations are off by a page.  For example, Plaintiff cites 28:21–29:5, but the Court believes Plaintiff meant to cite 29:21–30:5.  Second, Plaintiff simply cites the exact same testimony Defendant cites in its statement of facts.  Third, these citations support Defendant's facts as they involve defense counsel asking Plaintiff whether certain damage contained in Mr. Fredrics's estimate was caused by the 2019 loss, to which Plaintiff responds the damage was not caused by the relevant loss.  The Court thus deems Defendant's facts 24, 25, and 26 admitted.

not include and "prior losses." (Dkt. 37 ¶ 5.) In opposing summary judgment, she also filed two affidavits from Mr. Fredrics. (Dkts. 36, 42-5.)

## II.    Objections and Motions to Strike

### A.    Legal Standard

"Several district courts in the Eleventh Circuit have held that a motion to strike is not the proper method for challenging the admissibility of evidence in an affidavit." *Corey Ariport Servs., Inc. v. City of Atlanta*, 632 F. Supp. 2d 1246, 1267 (N.D. Ga. 2008), *rev'd in part sub nom. Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280 (11th Cir. 2009). "[T]he preferred method for challenging a defective affidavit is to file a notice of objection to the challenged portion of the affidavit." *Putnal v. Guardian Life Ins. Co. of Am.*, No. 5:04-cv-130, 2006 WL 2850424, at *3 (M.D. Ga. Sept. 29, 2006).

### B.    Bruce Fredrics's First and Second Affidavits

Plaintiff submitted her Rule 26 disclosures on September 11, 2020, stating no experts had been "hired to date for trial" but reserving her right to supplement the response. (Dkt. 14 at 11.) On November 4, 2020, Plaintiff identified Mr. Fredrics as a purported expert in her responses

to Defendant's first interrogatories, stating Mr. Fredrics is an "insurance and damage expert used by Plaintiff in this case and his expertise will be on the insurance industry standards [and] the value of the damages for Plaintiff's real and personal property in this case." (Dkt. 38-1 at 3.) Discovery ended April 30, 2021, without disclosure of an expert report.

Defendant filed a motion for summary judgment on May 27. (Dkt. 33.) Well beyond the date in which she was required to respond to that motion, Plaintiff filed an emergency motion for extension of time to respond to Defendant's motion for summary judgment. (Dkt. 34.) The Court granted that motion. On August 3, 2021, over thirteen weeks after the expiration of the discovery period, Plaintiff submitted Mr. Fredrics's first affidavit, claiming he would serve as an expert witness in this case. (Dkt. 36.) Then, in responding to Defendant's motion for summary judgment, Plaintiff included Mr. Fredrics's second affidavit, purporting to offer several legal opinions. (Dkt. 42-5.) Defendant moves to strike both. (Dkts. 38, 45.)

Regarding the first, Defendant argues Mr. Fredrics was not identified as an expert in Plaintiff's initial disclosures, has not provided a report, and has not provided a summary of facts and opinions to which

9

he is expected to testify, or the bases for them. (Dkt. 38 at 10.) Plaintiff filed nothing in response. The Court thus deems the motion unopposed. LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). After considering its merits, the Court sustains the objection and strikes that affidavit.

Federal Rule of Civil Procedure 26(a)(2)(B) states an individual retained to provide expert testimony must provide a signed written report containing

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the expert in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The Rule also states that these disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Local Rule 26.2(C) provides the following with respect to the timing for designating witnesses:

> Any party who desires to use the testimony of an expert witness shall designate the witness sufficiently early in the discovery period to permit the opposing party the opportunity

10

to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

LR 26.2(C), NDGa.

The November 4 revelation of Mr. Fredrics's name was not enough to discharge Plaintiff's obligation under the federal and local rules. "'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinions' and 'the basis and reasons therefor.'" *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008). To date, Plaintiff has not disclosed the bases for Mr. Fredrics's opinions.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The sanction of exclusion is automatic and mandatory unless the sanctioned

party can show that its violation was justified or harmless. *See id.*; *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (explaining that compliance with Rule 26's expert disclosure requirement is "not merely aspirational"), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (affirming order striking expert for not properly disclosing the scientific bases for his expert opinion in a timely manner). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell*, 318 F. App'x at 825 (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

Plaintiff offers no excuse or explanation for the lack of a report. Plaintiff obviously knew she would use Mr. Fredrics since November 4, 2021, yet never provided the bases for his opinions and did not provide his opinions until after Defendant moved for summary judgment. Plaintiff's failure also prohibited Defendant from deposing Mr. Fredrics or naming its own expert. Plaintiff's failure to comply with Rule 26(a) was unjustified and harmful to Defendant. The Court thus sustains

Defendant's objection and will not consider Mr. Fredrics's first affidavit. (Dkt. 38.)

Defendant also objects to and moves to strike Mr. Fredrics's second affidavit arguing it has "nothing to do with the issues before the Court on Defendant's Motion for Summary Judgment." (Dkt. 45 at 1.) Plaintiff, again, filed nothing in response. The Court thus deems that motion unopposed as well. LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). After considering its merits, the Court all sustains Defendant's objection to it.

Mr. Fredrics offers six "expert" opinions in his second affidavit. (Dkt. 42-5 at 8–10.) As his first expert opinion, he simply attaches emails between him, Plaintiff's attorney, and Defendant. (*Id.* at 8.) The emails, addressing an appraisal, are irrelevant to Defendant's motion. For his second opinion, Mr. Fredrics states there was one phone call between himself, Plaintiff's attorney, and Defendant involving an appraisal issue. (*Id.*) Again, not relevant. As his third opinion, Mr. Fredrics states he is a subject matter expert on appraisal and lists the areas about which he can advise. (*Id.* at 8–9.) Appraisal issues are irrelevant to this case. Mr. Fredrics's fourth and fifth opinions address a Georgia Court of Appeals

opinion and a Tenth Circuit opinion, respectively. (*Id.* at 9–10.) These opinions address legal matters which are the province of the court. Mr. Fredrics's final opinion focuses on the appraisal process—again, an irrelevant issue. (*Id.* at 10.) Mr. Fredrics's opinions are as unhelpful as they are irrelevant to the issues in Defendant's motion for summary judgment. The Court thus refuses to consider his second affidavit.

### C.   Plaintiff's Affidavit

After her deposition, Plaintiff sought to submit an affidavit changing or clarifying certain statements she made in her deposition. (Dkt. 37.) She explained that, as a native French (Haitian) Creole speaker, she did not understand all the questions asked of her during the deposition. (*Id.*) Defendant objects to and moves to strike Plaintiff's affidavit arguing "it is nothing more than her counsel's argument couched as an affidavit, and is inherently inconsistent with the Plaintiff's prior sworn deposition testimony." (Dkt. 39 at 1.) Plaintiff filed nothing in response.[6] The Court thus deems the motion unopposed. LR 7.1(B),

---

[6] Even in responding to Defendant's motion for summary judgment, Plaintiff merely referenced her affidavit without ever arguing it should not be treated as a sham or citing any case law in support of that contention. (Dkt. 42-1 at 20-21.)

NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). After considering its merits, the Court sustains Defendant's objection.

"Generally, discrepancies between a witness's affidavit and deposition do not defeat the admissibility of the affidavit." *Poitevint v. United Recovery Sys., LP*, 899 F. Supp. 2d 1230, 1235 (N.D. Fla. 2012). "An affidavit may only be disregarded as a sham when . . . [it] contradicts, without explanation, previously given clear testimony." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). The contradiction must be "inherent." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). Otherwise, "any apparent contradiction becomes an issue of credibility or goes to the weight of the evidence." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012). The sham affidavit "rule is applied sparingly because of the harsh effect it may have on a party's case." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007). Defendant "bear[s] a heavy burden in order to exclude an affidavit under the sham affidavit rule." *In re Stand "N Seal, Prods. Liab. Litig.*, 636 F. Supp. 2d 1333, 1335 (N.D. Ga. June 11, 2009).

During her deposition, Plaintiff testified about previous claims, including a 2009 claim and a 2015 claim. (Dkt. 33-3 at 18:6–28:11.) She also testified that portions of the demanded amounts were not, in fact, related to the July 14, 2019 water loss, and instead, represented unrelated, prior damages related to her prior claims. (Dkts. 33-1 ¶ 24; 42-2 ¶ 24.) Defense counsel went through the estimate and asked Plaintiff about the damage listed room by room. Specifically, defense counsel asked "[w]as there damage to your laundry room in the 2019 claim," and Plaintiff testified "no." (Dkt. 33-4 30:3–4.) Then defense counsel asked "[w]as there any damage to the lower hall from the 2019 claim," to which Plaintiff first testified she did not understand what defense counsel meant by the "lower hall," but (after counsel clarified she meant the area around the stairs) Plaintiff testified the lower hall was not damaged as part of the 2019 loss. (*Id.* at 30:7–23.) Defense counsel then asked similar, unambiguous questions about the lower bath, dining room, and master bedroom to which Plaintiff responded those areas were not damaged in the 2019 leak. (*Id.* at 31:1–5, 32:23–25, 37:12–14.) But in her affidavit, Plaintiff testified "she is not claiming any 'prior losses' in this action and any statement or comment by her contrary to this is

wrong – she just did not understand the nuances of the questioning" as her native language is French (Haitian) Creole.   (Dkt. 37 ¶¶ 1, 5.) Plaintiff testified by declaration that she gave "incorrect responses" in her deposition because of the language barrier.  (*Id.* ¶ 4.)

Without a doubt, Plaintiff's deposition testimony and her affidavit attestations conflict.  Defendant's objection thus turns on whether the affidavit contradicts without explanation.   And the answer to that question depends on what the term "explanation" means.  It does not mean *any* explanation, but rather means a *plausible* explanation.  *See Santhuff v. Seitz*, 385 F. App'x 939, 945 (11th Cir. 2010) (the district court did not err by disregarding an affidavit that "offered no *plausible explanation*"); *Ortiz v. NAC Dynamics, LLC*, No. 8:12-cv-1998, 2013 WL 12388567, at *3 (M.D. Fla. Feb. 14, 2013) ("[T]he sham pleading rule is inapplicable here in light of Plaintiff's *plausible explanations* for the discrepancies between the two declarations."); *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) ("[W]e have held that a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her sworn testimony without demonstrating a *plausible explanation* for the conflict" (citing *Hackman v. Valley Fair*, 932 F.2d 239,

17

241 (3d Cir. 1991)).  And Plaintiff does not offer a plausible explanation for the discrepancies between her deposition testimony and her affidavit. *See In re ConAgra Peanut Butter Prods. Liab. Litig.*, No. 1:08-CV-2932, 2013 WL 4216472, at *5 (N.D. Ga. Aug. 14, 2013) ("Neither of the Plaintiffs' counsel's explanations—that it was his first deposition and that there was a language barrier—are valid in the face of the type of clear, unambiguous and repetitive statements here."); *Santhuff*, 385 F. App'x at 945 (rejecting witness's explanation that in his affidavits he understood the word "photograph" to mean pictures stored on his computer, but in his deposition he understood it to mean only printed images).

In *ConAgra Peanut Butter*, a surgeon stated, "unequivocally in his deposition several times that he did not make an 'independent assessment' of whether [the plaintiff's] gastrointestinal illness was caused by Salmonella." 2013 WL 4216472, at *3.  Later in his deposition, the surgeon changed his testimony and said he had performed an independent assessment.  *Id.* at *4.  Afterwards, the surgeon submitted an affidavit also saying he had made an independent assessment.  *Id.* The court found that, even though the surgeon changed his testimony in

his deposition, his initial testimony was so clear, vigorous, and repeated that the court could not conclude his change in testimony was an honest discrepancy. *Id.* at *5. The court stated neither of the plaintiffs' "counsel's explanations—that it was his first deposition and that there was a language barrier—are valid in the face of the type of clear, unambiguous and repetitive statements here." *Id.* And the surgeon simply stated, "To the extent, if any, there is any uncertainty in my deposition as to whether I made an independent diagnosis or assessment of [the plaintiff], I now make clear that I did make an independent diagnosis and assessment." *Id.* The court found that statement was "not an explanation at all, much less a valid one" and therefore refused to consider the affidavit in ruling on summary judgment. *Id.*

The facts here are even more egregious. On February 9, 2020, Plaintiff's counsel sent a letter to one of Defendant's claim managers saying Plaintiff must have a French Creole interpreter at any depositions as she has limited understanding of the English language, especially as it relates to the nuances of her claims. (Dkt. 37 at 4.) But that was the last anyone heard of that issue. On November 17, 2020, Plaintiff's counsel—the same one who wrote the earlier letter—corresponded with

Defendant's attorney—who were not copied on the prior letter—to schedule Plaintiff's deposition. (Dkts. 39-1; 39-2.)  Plaintiff's counsel did not mention Plaintiff's need for a  translator. (*Id.*)  Plaintiff's attorney exchanged more emails about the deposition on January 5, 2021, again without mentioning the need for a translator.  (Dkt. 39-3.)

Plaintiff's deposition occurred on February 18, 2021.  (Dkt. 33-3.) Neither Plaintiff nor her counsel provided an interpreter, requested an interpreter, or objected to proceeding without an interpreter.  (*Id.*)  The issue of an interpreter never arose.  At the deposition, defense counsel asked "if I ask a question and you give me an answer, I will presume that you understood my question. Is that fair?"  (*Id.* at 7:12–14.)  To which Plaintiff responded "[c]orrect."  (*Id.* at 7:15.)  During the course of the deposition, Plaintiff—as any deponent does—occasionally said she did not understand a question, said she did not understand a term counsel used, or asked that a question be repeated or rephrased.  (*Id.* at 12:14-9; 14:12; 26:23; 30:12; 42:5.)  Having reviewed the deposition, the Court can find no instance in which Plaintiff or her lawyer raised any issue regarding her ability to understand the questions put to her, particularly in regards to the damage to her home.  The transcript gives no hint of a

communication problem. The parties agreed to suspend Plaintiff's deposition for unrelated medical reasons. (*Id.* at 47.)

In February 2021, counsel began emailing to schedule the completion of Plaintiff's deposition. (Dkt. 39-4.) Again, Plaintiff's counsel said nothing about the need for a translator or Plaintiff's alleged trouble understanding English. (*Id.*) Plaintiff completed her deposition in April 2021. (Dkt. 33-4.) Again, neither Plaintiff nor her counsel provided an interpreter, requested an interpreter, objected to proceeding without an interpreter, or objected to Plaintiff's understanding of the English language. Defense counsel again asked Plaintiff "if you answer my question, I will presume you understood my question; is that fair?" (*Id.* at 5:22–23.) To which Plaintiff responded "[o]kay." (*Id.* at 5:24.) Again, during the course of the deposition, Plaintiff occasionally said she did not understand a question, said she did not understand a term counsel used, or asked that a question be repeated or rephrased. (*Id.* at 30:12; 39:1; 55:1; 57:21; 70:4-12.) And again, the Court has reviewed the transcript and finds no hint of a communication problem. Following completion of her deposition, Plaintiff never executed an errata sheet to "correct" any testimony.

On August 16, 2021, Plaintiff filed a Notice of Filing Plaintiff's Affidavit. (Dkt. 37.) The affidavit contradicts Plaintiff's prior deposition testimony with respect to "prior claims." (*Id.* ¶ 5.) Specifically, Plaintiff averred that she was "not claiming any 'prior losses' in this action and any statement or comment by her contrary to this is wrong – she just did not understand the nuances of the questions." (*Id.*) That is not a plausible explanation.

Once litigation commenced, neither Plaintiff nor her counsel ever said anything about a translator. Plaintiff fails to explain why she did not provide a translator or ask for one. She also does not explain why she failed to object to proceeding with two deposition sessions without an interpreter. The deposition transcripts also establish Plaintiff knew when she did not understand a question, and in those circumstances, asked for clarification. (Dkt. 33-4 at 54:25–55:1 ("I don't understand that question.").) And Plaintiff fails to clarify which specific questions or words she did not understand. She simply says that—to the extent she ever admitted during her testimony that her February 2020 demand included damages incurred prior to the July 2019 water leak—she must have misunderstood the question. Without identifying a single instance

in which she was confused, she says she misunderstood everything.  A few examples show the ludicrous nature of Plaintiff's disavowal.  As explained above, since the February 2020 demand included a claim for damages to her laundry room, defense counsel asked, "[w]as there damage to your laundry room in the 2019 claim," and Plaintiff testified "no." (Dkt. 33-4 30:3–4.)  Plaintiff does now even attempt to explain how she could have been confused about this simple discussion of her own home.  And, when  defense counsel asked "[w]as there any damage to the lower hall from the 2019 claim," Plaintiff first testified she did not understand what defense counsel meant by the "lower hall," but (after counsel clarified she meant an area by the stairs, Plaintiff testified the lower hall was not damaged in 2019 loss.  (*Id.* at 30:7–23.)  Again, Plaintiff does not even attempt to explain how she was confused with this simple exchange.

Only now, after Defendant filed its motion for summary judgment in reliance on her testimonial admission, does Plaintiff seek to avoid the admissions in her deposition by conceding she understood the words but not the nuances of the English language.  The Court finds Plaintiff's explanation totally inadequate and concludes the case falls into the

narrow area where a sham affidavit must be excluded.  The Court thus sustains Defendant's objection (Dkt. 39) and excludes Plaintiff's declaration.

## III.  Motion for Summary Judgment

### A.    Legal Standard

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing *Anderson*, 477 U.S. at 248).   A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 1361 (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The nonmoving party then has the

burden of showing that summary judgment is improper by coming forward with "specific facts" showing there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).  "The nonmoving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint."  *Newsome v. Webster*, 843 F. Supp. 1460, 1465 (S.D. Ga. 1994) (citing *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir. 1981)).

## B.   Discussion[7]

Plaintiff sued asserting claims for (1) bad faith; (2) attorneys' fees and costs; (3) punitive damages; (4) Georgia RICO, and (5) diminution of value.  Defendant moves for summary judgment on all claims.  (Dkt. 33.)

---

[7] Throughout Plaintiff's response brief, she relies almost exclusively on allegations from her complaint rather than admissible evidence.  While Plaintiff titles her statement of additional facts, "Plaintiff's Additional Statements of Undisputed Material Facts from her Verified Complaint," there is no indication her complaint is verified.  At this stage of litigation, Plaintiff must present admissible evidence to support her claims.  *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658 (11th Cir. 1984) ("[t]he party adverse to the movant for summary judgment cannot rest on his pleadings to present an issue of fact," but must "respond with affidavits, depositions, or otherwise, in order to reflect that there are material facts which must be presented to a jury for resolution").  It is also apparent from her response brief Plaintiff conflates

### 1.    Bad Faith

To prevail on a bad faith claim under O.C.G.A. § 33-4-6, an insured must show: "(1) that a demand for payment was made against the insurer at least sixty days prior to filing suit, and (2) that the insurer's failure to pay was motivated by bad faith." *Sutton v. State Farm Fire & Cas. Co.*, No. 2:17-CV-103, 2019 WL 2004133, at *2 (N.D. Ga. Feb. 26, 2019) (citing O.C.G.A. § 33-4-6 and *Cagle v. State Farm Fire & Cas. Co.*, 512 S.E.2d 717, 718–19 (Ga. Ct. App. 1999)).  "Because damages for bad faith against an insurer 'are in the nature of a penalty, the statute is strictly construed and the right to such recovery must be clearly shown.'" *Id.* (quoting *Fla. Int'l Indem. Co. v. Osgood*, 503 S.E.2d 371, 375 (Ga. Ct. App. 1998)).  The insured bears the burden of proving the insurer acted in bad faith.  *See Allstate Ins. Co. v. Smith*, 597 S.E.2d 500, 502 (Ga. Ct. App. 2004); *Lavoi Corp. v. Nat'l Fire Ins. of Hartford*, 666 S.E.2d 387, 391 (Ga. Ct. App.

---

the standards applicable to a motion to dismiss with the standards applicable to a motion for summary judgment since Plaintiff repeatedly argues she has properly *pled* the elements of her various claims and states "after discovery."   (Dkt. 42-1 at 11.)   Plaintiff also relies on conclusory allegations without supporting facts which have no probative value. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985); *Sanders v. Nunley*, 634 F. Supp. 474, 476 (N.D. Ga. 1985) ("[C]onclusory statements do not suffice to establish the genuine issue of material fact necessary to overcome a summary judgment motion.").

2008) (a bad faith claim thus requires the insured to prove "the claim is covered" and that "the insurer's failure to pay was motivated by bad faith"). "If there is any reasonable ground for the insurer to contest the claim, there is no bad faith." *State Farm Mut. Auto. Ins. Co. v. Harper*, 188 S.E.2d 813, 817 (Ga. Ct. App. 1972); *Swyters v. Motorola Emps. Credit Union*, 535 S.E.2d 508, 510 (Ga. Ct. App. 2000) ("A refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there are any reasonable grounds for an insurer to contest the claim, there is no bad faith.").

Defendant contends Plaintiff's bad faith claim fails because her pre-suit demand, by Plaintiff's own admission, included damage not caused by the July 14, 2019 water loss. (Dkt. 33-2 at 8.) In her February 7, 2020 letter, Plaintiff demanded $110,878.59. (Dkt. 33-10 at 4.) The demand sought damages to dwelling in the amount of $87,760.02, contents in the amount of $3,116.57, and $20,000 for diminution of value.[8] (*Id.*) As

---

[8] Plaintiff testified her $20,000 diminution claim was based on an appraisal by the tax bureau. (Dkt. 33-4 at 51:1–8.) Defendant contends Plaintiff could not produce any documentation to support such a claim. (Dkt. 33-2 at 10.) While this may be true, Defendant has not moved to exclude Plaintiff's testimony or shown that it should not be considered. Thus, at this stage, Plaintiff's testimony is in the record and will be considered.

already explained in detail, Plaintiff then testified that portions of the demanded amounts were unrelated to the July 14, 2019 water loss, and instead represented unrelated, prior damage from prior claims. (Dkt. 33-4 at 29:21–30:5, 30:7–23, 31:1–5, 32:23–25, 37:12–14; 47:5–8.)  Plaintiff also admitted that while her contents claim was for $3,116.57, Defendant paid her $5,554.47 for contents. (*Id.* at 47:23–48:5.) Defendant argues given Plaintiff's inclusion of unrelated damages and Defendant's payment of the contents loss in an amount which exceeded the claim, Defendant's handling of Plaintiff's claim was not "frivolous or unfounded." (Dkt. 33-2 at 10.)  The Court agrees.

"Ordinarily, the question of bad faith is one for the jury," but "when there is no evidence of unfounded reason for the nonpayment, *or* if the issue of liability is close, the court should disallow imposition of bad faith penalties." *Am. Safety Indem. Co. v. Sto Corp.*, 802 S.E.2d 448, 457 (Ga. Ct. App. 2017). "[B]ad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment." *Id.* Here, there is no evidence of an unfounded reason, and even if there was, the issue of liability would then

be close.  Plaintiff admitted Defendant did not owe her money for damages from any prior claims.  (Dkt. 70:11–14.)  Plaintiff's inclusion of unrelated damages thus made it abundantly reasonable for Defendant to contest her claim.  There was no bad faith as a matter of law, and the Court grants Defendant summary judgment on the bad faith claim.  *See Shaffer v. State Farm Mut. Auto. Ins. Co.*, 540 S.E.2d 227, 245 (Ga. Ct. App. 2000) ("[I]t is well-settled law that bad faith penalties are not authorized if an insurer has a reasonable and probable cause for refusing to pay a claim." (quotations omitted)).

### 2.    Georgia RICO

Under Georgia's Racketeer Influenced and Corrupt Organization Act, it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."  O.C.G.A. § 16-14-4(a).  A "pattern of racketeering activity" means "at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions" that are interrelated.  *Id.* § 16-14-3(8)(A).  A "racketeering activity" is the commission, attempt, solicitation of

another, or coercing of another to commit a "crime which is chargeable by indictment" under one of forty categories of offenses. *Id.* § 16-14-3(9)(A)(i)–(xl).

"To establish 'a civil RICO claim, [a plaintiff] is required to show by a preponderance of the evidence that [a defendant] violated the RICO statute, OCGA § 16-14-4, that [plaintiff] has suffered injury, and that [the defendant's] violation of the RICO statute was the proximate cause of the injury.'" *Mbigi v. Wells Fargo Home Mortg.*, 785 S.E.2d 8, 16 (Ga. Ct. App. 2016) (citation omitted). "To demonstrate a violation of OCGA 16-14-4, [a plaintiff] must 'show an injury by a pattern of racketeering activity. A pattern requires at least two interrelated predicate offenses.'" *Id.* (citation omitted).

Defendant argues Plaintiff fails to provide evidence of a single criminal act, much less evidence of a pattern of racketeering activity. (Dkt. 33-2 at 18.)  In support of her Georgia RICO claim, Plaintiff relies on the predicate acts of mail and wire fraud.  (Dkt. 42-1 at 15.)  There is, however, no evidence in the record to support these predicate acts.  Both mail and wire fraud have statutory elements.  But, instead of identifying evidence to raise an issue of material fact as to whether Defendant

committed these offenses, Plaintiff simply contends she has shown Defendant "intentionally injured Plaintiff through at least two (2) predicate acts (mail fraud and wire fraud)." (*Id.*) That is insufficient at summary judgment.

Defendant also argues Plaintiff has offered no evidence to suggest she suffered any injury flowing from a purported RICO violation. (Dkt. 33-2 at 19–21.) Under the third RICO element—proximate cause—"a private plaintiff . . . must 'show that the injury suffered flowed *directly* from the predicate offense.'" *Nicholson v. Windham*, 571 S.E.2d 466, 468 (Ga. Ct. App. 2002) (citation omitted). Plaintiff's damages were caused by water flooding from the upstairs bathroom, not racketeering activity. Without the water damage and consequent expenses to repair the damage, Plaintiff would have no claim for insurance proceeds.

Plaintiff responds contending she has *pled* sufficient facts and elements to support her fraud and Georgia RICO claims. (Dkt. 42-1 at 13–16.) She contends her *complaint* sets forth Defendant's schemes and when read as a whole, it clearly identifies the time, place, and content of the RICO predicate acts. (*Id.* at 15.) Plaintiff also argues by using the phrase "due to" Defendant's actions Plaintiff was injured, she has

sufficiently *alleged* proximate cause.  (*Id.*)  Plaintiff, however, provides

no admissible evidence to support any elements of a fraud or Georgia

RICO claim.  *See Van T. Junkins & Assocs.*, 736 F.2d at 658 ("[t]he party

adverse to the movant for summary judgment cannot rest on his

pleadings to present an issue of fact," but must "respond with affidavits,

depositions, or otherwise, in order to reflect that there are material facts

which must be presented to a jury for resolution").

Because Plaintiff has presented no evidence to suggest Defendant

violated the RICO statute or that any of her damages were caused by

Defendant's conduct, the Court grants Defendant's motion as to

Plaintiff's Georgia RICO claim.

### 3.    Diminution of Value

Plaintiff brings a claim for diminution of value asserting

Defendant's failure to fully indemnify Plaintiff caused her to suffer a

diminution of value in her home of at least $20,000.  (Dkt. 1-1 at 14.)  The

policy provides: "Loss Settlement does not include payment for any actual

or perceived decrease in market or resale value resulting from loss to or

repair of your covered property."   (Dkt. 33-5 at 41.)   Plaintiff's only

response is that the alleged certified policy was not received by Plaintiff

until one day before her February deposition and she could not read the entire document during that time. (Dkt. 42-1 at 4.) Plaintiff thus contends any questions about "that copy of the alleged Policy must be excluded." (*Id.*) But this is an unsupported conclusory statement and contradicted by Plaintiff's deposition testimony. (Dkt. 33-3 at 12:13–13:4 (Plaintiff confirms Exhibit 1 was her effective insurance policy), 14:12–17 (Plaintiff testified she could log into Defendant's website and get a copy of her policy).) As it appears there is no genuine dispute of fact that the policy excludes a diminution in value claim, the Court grants Defendant's motion as to that claim.

### 4.   Attorneys' Fees

Plaintiff brings a claim for attorneys' fees under O.C.G.A. § 13-6-11 on the grounds Defendant's stubborn litigiousness has caused "unnecessary trouble and expense." (Dkt. 1-1 at 12.) But a "claim for attorney's fees and litigation expenses under O.C.G.A. § 13-6-11 [is] barred by O.C.G.A. § 33-4-6, which provides insureds the exclusive procedure to recover attorney's fees." *Powers v. Unum Corp.*, 181 F. App'x 939, 944 n.8 (11th Cir. 2006). "Plaintiffs may not seek fees under § 13-6-11 as an alternative claim even where they cannot prevail under §

33-4-6." *Thercy v. Allstate Prop. & Cas. Ins. Co.*, No. 1:13-cv-1099-RWS (N.D. Ga. Aug. 29, 2013), ECF No. 18 at 12–13, n.4.  Because O.C.G.A. § 33-4-6 is Plaintiff's exclusive remedy for attorneys' fees, the Court grants Defendant's motion as to this count.

### 5.   Punitive Damages

Plaintiff asserts a claim for punitive damages under O.C.G.A. § 51-12-5.1.  (Dkt. 1-1 at 12–13.)  Georgia case law establishes "the penalties contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds."  *Great Sw. Exp. Co., Inc. v. Great Am. Ins. Co. of N.Y.*, 665 S.E.2d 878, 881 (Ga. Ct. App. 2008).  Because "[s]ection 33-4-6 is the exclusive remedy for an insurer's bad faith refusal to pay its insured's claim, . . . punitive damages and attorney's fees are not available under any other Georgia statute." *Armstead v. Allstate Prop. & Cas. Ins. Co.*, No. 1:14-cv-586, 2014 WL 6810727, at *11 (N.D. Ga. Dec. 13, 2014).  The Court thus grants Defendant's motion as to Plaintiff's claim for punitive damages.

## IV.   Conclusion

The Court **SUSTAINS** Defendant's Objection to the Affidavit of Bruce Fredrics.  (Dkt. 38.)

The Court **SUSTAINS** Defendant's Objection to the Affidavit of Gaetane Cadet.  (Dkt. 39.)

The Court **SUSTAINS** Defendant's Objection to the Second Affidavit of Bruce Fredrics.  (Dkt. 45.)

The Court **GRANTS** Defendant's Motion for Summary Judgment. (Dkt. 33.)

**SO ORDERED** this 7th day of March, 2022.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE